UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                                              18-CR-138 (JLS)

LANCE PARKER,

Defendant.

---

## DECISION AND ORDER

Defendant Lance Parker, proceeding *pro se*, moved for compassionate release and sentence reduction. Dkt. 746. For the reasons set forth below, his motion is denied.

## FACTUAL & PROCEDURAL BACKGROUND

On October 22, 2022, Parker pled guilty to a single-count Superseding Information (Dkt. 273), which charged violations of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846 (conspiracy to possess with intent to distribute, and to distribute, 500 grams or more of cocaine). Dkt. 274. On April 19, 2022, the Court sentenced Parker to 78 months of imprisonment to be followed by five years of supervised release. Dkt. 658.

Parker, who is 45 years old, is currently housed at United States Penitentiary Lewisburg ("USP Lewisburg"). According to the Bureau of Prisons ("BOP"), his projected release date is August 22, 2027. *See Find an Inmate,* Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed April 3, 2023). On September 30, 2022, Parker moved for compassionate release and a sentence

reduction. Dkt. 746. He also requests that the Court appoint counsel to represent him. *Id.* at 15. In support, Parker cites his medical conditions as increasing his risks from contracting COVID-19, his need to care for his disabled sister, and his conduct while in custody.[1] *See id.*

According to the Government, Parker failed to show extraordinary and compelling reasons that justify a reduction in his sentence. Dkt. 763, at 6. The Government argues that compassionate release is not warranted because Parker refused to receive a COVID-19 vaccination and failed to demonstrate that there are no other available caretakers for his disabled sister. *Id.* at 8–16, 17–18. The Government argues that rehabilitative efforts alone cannot be considered an extraordinary and compelling reason for a sentence reduction. *Id.* at 19. The Government further argues that the factors contained in 18 U.S.C. § 3553(a) weigh against Parker's release. *Id.* at 20–21. Parker replied. Dkt. 768.

## DISCUSSION

### I. LEGAL STANDARD

A judgment of conviction "that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances." *United States v. Seshan*, 850 F. App'x 800, 801 (2d Cir. 2021) (quoting *Dillon v. United States*, 560 U.S. 817, 824 (2010)). The compassionate release statute, as amended by the First Step Act, is a statutory

---

[1] Parker also urges the Court to consider the 46 months he spent on pretrial release as an "extraordinary and compelling" reason that justifies a sentence reduction. Dkt. 768, at 9.

2

exception. *United States v. Day*, 473 F. Supp. 3d 209, 212 (W.D.N.Y. 2020).

Pursuant to 18 U.S.C. § 3582(c), and as relevant here, courts may modify a previously imposed sentence where:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i)–(ii).

Relief is appropriate pursuant to Section 3582(c)(1)(A) when the following conditions are met: (1) the exhaustion requirement of the statute is satisfied; (2) extraordinary and compelling reasons warrant a reduction of the prison sentence; (3) the factors set forth in 18 U.S.C. § 3553(a) support modification of the prison term; and (4) the reduction in the prison sentence is consistent with the Sentencing Commission's policy statements. *Day*, 473 F. Supp. 3d at 213.[2] If such conditions

---

[2] The United States Sentencing Commission has defined "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13, cmt. n.1. But the Second Circuit clarified that where, as here, a motion for compassionate release is made by a defendant, rather than by the BOP, Guideline § 1B1.13 is not applicable. *See United States v. Brooker*, 976 F.3d 228, 235–36 (2d Cir. 2020). Thus, while Guideline § 1B1.13 provides guidance, the Court is not bound by it and may consider "'the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.'" *United States v. Bush*, 17-CR-611-4, 2021 WL 3097417, at *1 (S.D.N.Y. July 21, 2021) (quoting *Brooker*, 976 F.3d at 237).

3

are met, Section 3582(c)(1)(A) "allows for any sentence reduction—up to and including but not limited to time served . . . ." *United States v. Rodriguez*, 492 F. Supp. 3d 306, 309 (S.D.N.Y. 2020).

Parker requests a "reduction of his 78-month sentence or 6½ year term of imprisonment either to time served and an immediate release from federal prison," a "modif[ication] [of] his 5-year term of supervised release into the unserved portion of his 78-month sentence and substitut[ion] [of] such remaining imprisonment term to home detention," or a "reduc[tion] [of] his custodial sentence as the court deems necessary." Dkt. 746, at 1–2.

## II. ANALYSIS

The Government concedes that Parker has exhausted his administrative remedies. Dkt. 763, at 6–7. The Court therefore addresses only whether Parker has shown "extraordinary and compelling" reasons, and whether the Section 3553(a) factors support a reduction. Because Parker has not shown "extraordinary and compelling" reasons to warrant a reduction of his sentence, and no reduction is warranted upon consideration of the Section 3553(a) factors, the motion is denied.

### A. Defendant Has Not Met the Demanding Standard of Showing Compelling and Extraordinary Reasons Warrant a Reduction of His Sentence

#### 1. COVID-19

Parker argues that his medical conditions—including type II diabetes mellitus, pulmonary hypertension, obesity, high cholesterol, and chronic nerve damage—place him "in a high[-]risk category of compromised federal inmates who

4

are susceptible to serious complications, illnesses, or even death" if infected with COVID-19. Dkt. 746, at 6–7. Parker notes that the CDC defines his medical conditions as placing him at an increased risk for complications from COVID-19, and the BOP's Guidance on Aerosol Generating Procedures recognizes patients with conditions such as his as "high risk for contracting COVID." *Id.* at 7. Moreover, Parker points to the conditions at USP Lewisburg, including a "Code Red" Modified Operation implemented on May 2, 2022, its operation as a "unified complex," a low vaccination rate, and lack of social distancing. *Id.* at 3.

The Government concedes that Parker "has at least one condition that the CDC lists as putting individuals at increased risk of severe illness." Dkt. 763, at 7. But the Government contends that this alone is insufficient to establish Defendant's burden, noting that his medical records reflect that his health conditions are being appropriately monitored and treated. *Id.* In essence, the Government argues that Parker cannot use his refusal to obtain the COVID-19 vaccination—"the necessary self-care to ward off severe illness as a result of COVID-19"—as a basis for seeking compassionate release. *Id.* at 13.

In reply, Parker explains:

> There are many psychic as well as physical reasons as to why I have not been vaccinated with one of the COVID vaccines, including but not limited to: being afraid of becoming seriously ill due to the uncertainty of the vaccines as described above by CDC's "V-Safe data" own statistics, previous adverse reactions to vaccines and because the vaccines may breakdown my already impaired immune and/or respiratory systems— because the vaccines are no more or less than the "dead-COVID-virus itself.

5

Dkt. 768, at 6.

Courts in this circuit have granted relief under Section 3582(c) in light of COVID-19, particularly for those inmates with illnesses, injuries, or medical conditions that make them especially vulnerable to COVID-19. *See United States v. Yu*, No. 90 CR. 47-6 (AT), 2020 WL 6873474, at *4 (S.D.N.Y. Nov. 23, 2020) (collecting cases). The CDC has recognized obesity, hypertension, and diabetes as conditions that place "[a]dults of any age . . . at increased risk of severe illness from the virus that causes COVID-19." *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 10, 2023); *see also United States v. Mack*, No. 19 CR. 27 (PGG), 2021 WL 4148729, at *2 (S.D.N.Y. Sept. 13, 2021) (recognizing that defendant's severe obesity, hypertension, and diabetes placed him at increased risk of severe illness from COVID-19).

At this stage of the pandemic, however, "the threat from COVID-19 has diminished nationwide and within the BOP." *United States v. Roman*, No. 19-CR-116 (KMW), 2022 WL 17819525, at *2 (S.D.N.Y. Dec. 20, 2022). USP Lewisburg is currently operating at COVID-19 operational level 1, the lowest COVID-19 threat level. *See COVID-19 Modified Operations Plan & Matrix,* Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last accessed April 4, 2023). Two inmates are currently infected with COVID-19 at USP Lewisburg, and one inmate has died from COVID-19 throughout the duration of the pandemic. *See COVID-19 Statistics*, Fed. Bureau of Prisons,

6

https://www.bop.gov/coronavirus/covid19_statistics.html (last accessed April 4, 2023).

More generally, the spread of COVID-19 across the country has significantly decreased. *See COVID Data Tracker*, CDC, https://covid.cdc.gov/covid-data-tracker/#trends_weeklycases_select_00 (last accessed April 4, 2023). The federal government announced that it anticipates ending the national emergency concerning COVID-19 on May 11, 2023. *See* Continuation of the National Emergency Concerning the Coronavirus Disease 2019 (COVID-19) Pandemic, 88 FR 9385. And with the passage of H.J. Res. 7, it appears the government's response is in its final throes.[3] Over three years into the pandemic, "the Court finds that the risks that were heightened at the onset of the pandemic have largely been reduced or been under control at this late stage of the pandemic." *United States v. Malloy*, No. 07 CR. 898 (VM), 2023 WL 2237504, at *4 (S.D.N.Y. Feb. 27, 2023). In sum, there is no current issue making compassionate release appropriate here. *See United States v. Craft*, No. 02-81043, 2023 WL 318445, at *2 (E.D. Mich. Jan. 19, 2023) ("Early in the COVID-19 pandemic, some courts found the risk of contracting the virus in prison, coupled with a defendant's serious health conditions, met the extraordinary and compelling standard. However, pandemic conditions have

---

[3] President Biden has indicated that he will sign H.J. Res. 7, a joint resolution terminating the national emergency concerning COVID-19 immediately upon its effective date. *See* Mary Ellen McIntire, *Senate votes to overturn COVID-19 national emergency order*, Roll Call, Mar. 29, 2023, https://rollcall.com/2023/03/29/senate-votes-to-overturn-covid-19-national-emergency-order/.

7

evolved and these factors no longer constitute extraordinary and compelling reasons.").[4]

While Parker alleges that USP Lewisburg's health service department "has failed to accommodate [his] complete medical needs"—which has "substantially diminished [his] ability to provide self-care"—he fails to specify any way in which his medical needs have been neglected. Dkt. 768, at 4. His generalized fear of contracting COVID-19 is therefore insufficient to meet the demanding standard of "extraordinary and compelling" reasons, especially in light of the improved conditions at USP Lewisburg and elsewhere by Spring 2023.[5]

---

[4] Courts have been unsympathetic to unvaccinated defendants seeking compassionate release. *See, e.g., United States v. Poupart*, No. 3:11CR116 (JBA), 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021) ("The opportunity for individually-identifiable inmates to opt to receive the COVID-19 vaccine represent[ed] a sea change from their previous COVID-19 infection vulnerability and inability to protect themselves against the virus, even with comorbidities."); *United States v. Richiez-Castillo*, No. 00-CR-54-RJA, 2021 WL 1746426, at *5 (W.D.N.Y. May 4, 2021) ("Courts may consider a defendant's declination of a COVID-19 vaccine as part of their 'extraordinary and compelling' reasons analysis where a defendant argues his or her health is compromised while incarcerated during the pandemic, due to certain high-risk medical conditions."); *Sanchez v. United States*, No. 04-CR-36 (VEC), 2023 WL 144220, at *4 (S.D.N.Y. Jan. 10, 2023) ("In light of access to vaccines, prison protocol improvements, reduced infection rates, and effective therapeutics, even defendants with medical conditions that are comorbidities with COVID-19 have been denied compassionate release."); *United States v. Folkes*, No. 18-CR-257 (KAM), 2022 WL 1469387, at *6 (E.D.N.Y. May 10, 2022) ("Even when a defendant has suffered from hypertension and obesity, courts in this Circuit have declined to grant compassionate release."); *United States v. Mack*, No. 19 CR. 27 (PGG), 2021 WL 4148729, at *2 (S.D.N.Y. Sept. 13, 2021) (denying compassionate release where defendant suffered from severe obesity, hypertension, and diabetes that placed him at increased risk of severe illness from COVID-19, but refused the vaccine when it was offered to him).

[5] *See also United States v. Wofford*, No. 6:19-CR-06061 EAW, 2022 WL 9583714, at *3 (W.D.N.Y. Oct. 17, 2022) (denying compassionate release where defendant

8

To the extent that Parker argues more generally that USP Lewisburg is unable to cope with the ongoing pandemic, or the conditions at the facility are poor, that is not a basis for granting his compassionate release motion. *See United States v. Lawrence*, No. 19 CR. 437 (AKH), 2022 WL 4000904, at *3 (S.D.N.Y. Sept. 1, 2022) ("[T]he conditions universally applicable to all inmates at a given facility, including conditions instituted during the pandemic, do not give rise to extraordinary and compelling circumstances."). Nor do generalized statements about the conditions of confinement being harsher or more punitive than expected constitute extraordinary or compelling reasons for compassionate release. *See United States v. Labarca*, No. 11 CR. 12 (RMB), 2022 WL 203166, at *6 (S.D.N.Y. Jan. 24, 2022); *United States v. Farmer*, 19 Cr. 427 (LTS), 2022 WL 47517, at *4 (S.D.N.Y. Jan. 5, 2022) ("[G]eneralized statements about the conditions of confinement do not constitute compelling reasons for compassionate release."). In sum, COVID-19 provides no basis for relief at this time.

---

"established that his existing medical conditions present a risk factor for severe illness or death from COVID-19, given that USP Lewisburg appears to have the virus under control, and the additional fact that Defendant has refused to be vaccinated against this virus, offering no sound reason for said refusal"); *United States v. Roman*, No. 19-CR-116 (KMW), 2022 WL 17819525, at *2 (S.D.N.Y. Dec. 20, 2022) (denying compassionate release to inmate with pre-existing medical conditions because the threat from COVID-19 had diminished, USP Lewisburg implemented safety measures to reduce risk of infection, and inmate refused the vaccine); *United States v. Skyers*, No. 16-CR-377 (MKB), 2021 WL 2333556, at *3 (E.D.N.Y. June 7, 2021) (denying compassionate release to defendant with asthma, obesity, and hypertension because COVID-19 appeared to be under control at the facility, and "a generalized fear of contracting COVID-19 does not constitute extraordinary and compelling circumstances warranting release").

9

2. <u>Family Hardship</u>

Parker also argues that he is the only available caregiver for his disabled sister. Dkt. 746, at 8–9. The Government disputes this characterization, arguing that Parker worked full-time while his sister lived with him and his family, such that he could not be the sole available caregiver for her. Dkt. 763, at 17–18. The Government further contends that Parker failed to demonstrate that there are no other available caretakers for his disabled sister. *Id.* at 18.

To the extent Parker believes that his incarceration causes hardship on his family, that is not an extraordinary and compelling reason warranting reduction of his sentence. *See United States v. Pinsky*, No. 19-CR-375-7, 2022 WL 673189, at *2 (S.D.N.Y. Mar. 7, 2022) ("Being unavailable to assist family members is one of the sad and inevitable consequences of incarceration. Hardship on the family almost always results from serious criminal conduct, and while it is truly unfortunate that Defendant's incarceration has placed a burden on other family members, it is not an extraordinary and compelling circumstance.") (internal citations omitted); *United States v. Vailes*, No. 16-CR-297, 2020 WL 3960505, at *3 (E.D.N.Y. July 13, 2020) ("There is no question that a defendant's incarceration is painful and burdensome to family members, who must bear the stress of managing their lives without the defendant's help. It is an unfortunate fact, however, that these burdens are common to almost all families of incarcerated people, and do not constitute extraordinary or compelling factors.").

The policy statement provides that compassionate release may be granted due to family circumstances in the event of "(i) [t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "(ii) [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, A.N. 1(C). Parker does not allege that the caregiver for his child or his spouse has died or become incapacitated.[6]

And while "a defendant's status as the only available caregiver to a close family member may, in some circumstances, constitute an extraordinary and compelling reason for a sentence reduction, such is not the case here." *United States v. Martinez*, No. 10-CR-233S (1), 2022 WL 1089671, at *4 (W.D.N.Y. Apr. 12, 2022) (internal citations omitted). Courts generally "require a showing of evidence from several sources indicating that the defendant is the only available caregiver for a family member in dire conditions, before concluding that an extraordinary and compelling reason has been established." *United States v. Lindsey*, No. 13-CR-271-LTS, 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (internal quotation marks and citations omitted). Parker fails to demonstrate "that he is the only person who can provide" the required care and assistance to his sister, and "that no alternative sources of care are available, including other family and friends or social service and

---

[6] While the Court looks to Guideline § 1B1.13 for guidance, the Court is not bound by it and may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Bush*, 2021 WL 3097417, at *1 (quoting *Brooker*, 976 F.3d at 237).

11

community programs." *See United States v. Martinez*, No. 10-CR-233S (1), 2022 WL 1089671, at *4 (W.D.N.Y. Apr. 12, 2022); *see also United States v. Rollins*, No. 11-CR-251S, 2021 WL 5445772, at *4 (W.D.N.Y. Nov. 22, 2021); *United States v. Wilson*, No. 10-CR-363S (1), 2021 WL 2327312, at *4 (W.D.N.Y. June 8, 2021). As the Government points out, Parker worked full-time while his sister lived with him and his family, and his family helped care for her while he worked—which Parker acknowledges. *See* Dkt. 763, at 18; Dkt. 768, at 7. Moreover, according to Parker, his sister "relocated to a single apartment to care for herself" after he was incarcerated. Dkt. 746, at 9. While Parker and his sister may prefer that he care for her, and Parker may even be the best available caregiver, such circumstances do not provide a basis for relief. *See Martinez*, 2022 WL 1089671, at *4 ("While this Court understands that [Defendant] and his mother may prefer that [he] be released to provide any required care and assistance, their preference does not amount to an extraordinary and compelling reason for a sentence reduction."); *Rollins*, 2021 WL 5445772, at *4 (denying compassionate release to defendant who was the preferred, but not only, available caregiver).

3. Rehabilitation

Lastly, Parker argues that he "has been working extremely hard to rehabilitate and correct himself" since the offense occurred in 2018. Dkt. 746, at 11. Parker states that he has maintained "strong family ties and contact with positive people," and has participated in programming to "obtain some skills" and "prepare himself to return to society." *Id.* Additionally, Parker states that he has had "no

12

disciplinary infractions for adverse behavior or conduct since his incarceration." *Id.* at 10.

The "only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason.'" *Brooker*, 976 F.3d at 237–38 (footnote and emphasis omitted) (quoting 28 U.S.C. § 994(t)). Thus, even if Parker lacks a disciplinary record, "good behavior is not, by itself, a basis to grant compassionate release pursuant to 18 U.S.C. § 3582(c)." *United States v. Corin*, No. S7 10 CR 391-64, 2020 WL 5898703, at *4 (S.D.N.Y. Oct. 5, 2020). And while Parker has purportedly taken steps to rehabilitate himself while incarcerated, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Negron*, No. 11-CR-324-1 (CS), 2021 WL 3540240, at *2 (S.D.N.Y. Aug. 10, 2021). Therefore, Parker's rehabilitative efforts do not, alone or in combination with his other arguments, constitute an extraordinary and compelling reason for a sentence reduction. *See United States v. Lopez*, No. 12-CR-301S (1), 2022 WL 213897, at *4 (W.D.N.Y. Jan. 25, 2022) ("While Lopez's efforts at rehabilitating himself are commendable and should continue, they do not alone or in combination with his other argument constitute an extraordinary and compelling reason for a sentence modification."); *see also United States v. Salgado*, No. 15-CR-681, 2022 WL 3043100, at *2 (S.D.N.Y. Aug. 2, 2022) (stating that rehabilitation and a "spotless disciplinary record" do not warrant sentence reduction because "[t]o find otherwise would convert the process for obtaining a compassionate release into a de facto parole

system, through which defendants with good behavior are rewarded with sentence reductions"); *United States v. Poncedeleon*, No. 18-CR-6094, 2020 WL 3316107, at *3 (W.D.N.Y. June 18, 2020) ("As for Defendant's rehabilitative and behavioral record, those efforts are certainly worth commending, but it does not weigh heavily in favor of release. Indeed, by itself, rehabilitation of the defendant cannot constitute an 'extraordinary and compelling' reason justifying compassionate release.").

## B. The Section 3553(a) Factors Do Not Support Modification of Defendant's Sentence

Even if Parker has met his threshold burden of demonstrating extraordinary and compelling reasons for compassionate release, the Section 3553(a) sentencing factors counsel against a sentence reduction. The Section 3553(a) factors include, *inter alia*, the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1)–(2).

The nature, circumstances, and seriousness of the offense weigh against compassionate release. Parker directly participated in a transaction involving over 17 kilograms of cocaine, worth roughly $477,388.80. His conduct posed a substantial risk of harm to the public. Nor do Parker's history and personal characteristics favor compassionate release.

Parker argues that his acceptance of responsibility, lack of prior criminal

14

history, and culpable role in the offense support compassionate release.[7] Dkt. 746, at 10–14. At sentencing, the Court acknowledged letters of support from Parker's family and friends indicating that he is a hardworking family man who has acted as a provider and caregiver to many family members. And in imposing Parker's sentence, the Court expressly considered Parker's acceptance of responsibility, lack of prior criminal history, more limited role in the offense, and compliance with pre-trial release.

Further, the Court is mindful of the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of Defendant. 18 U.S.C. § 3553(a)(2). At sentencing, the Court considered the totality of the circumstances of Defendant's case, and all the mitigating and aggravating factors. After careful deliberation, the Court imposed a sentence—which included a term of imprisonment followed by a term supervised release—that would be consistent with the factors set forth in Section 3553(a).

For these reasons, releasing Parker would seriously undermine the goals of sentencing as reflected by the Court's original sentence.

## CONCLUSION

For the reasons above, Defendant's motion for compassionate release and a

---

[7] Parker also notes that the BOP classifies him as an offender with a "low" risk of recidivism, and that the Court released him on pretrial release. Dkt. 746, at 13.

sentence reduction (Dkt. 746) is DENIED. In addition, Defendant's request for appointment of counsel (Dkt. 746) is DENIED.

SO ORDERED.

DATED: April 5, 2023
Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE